UNITED STATES, Appellee,

v.

Private First Class Richard B. CARMAN, 068–54–3334, United States Army, Appellant.

SPCM 20826.

U.S. Army Court of Military Review.

15 Feb. 1985.

---

8. Judge ROBERT E. COHEN took final action on this case prior to his retirement from active service.

Lieutenant Colonel Arthur L. Hunt, JAGC, Major Stephen R. Dooley, JAGC, and Captain Karen S. Davis, JAGC, were on the pleadings for appellant.

Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Captain Robert L. Swann, JAGC, and First Lieutenant Tarek Sawi, JAGC, were on the pleadings for appellee.

Before SUTER, RABY, and HUNTER, Appellate Military Judges.

## OPINION OF THE COURT

RABY, Senior Judge:

Appellant was tried by a special court-martial composed of officer members. Contrary to his pleas, appellant was found guilty of wrongful possession and wrongful distribution of 11.21 grams of marijuana at a single time and location. He was sentenced to a bad-conduct discharge, confinement at hard labor for six months, and reduction to the grade of Private (E–1). Forfeitures were not adjudged. The convening authority at the time of action, Major General (MG) Michael J. Conrad, approved the sentence.

### I. Multiplicity

■ Appellant contends that Specification 1 of the Charge (wrongful possession of marijuana) is multiplicious for findings with Specification 2 of the Charge (wrongful distribution of marijuana). The government appropriately concedes this issue. We agree and will dismiss Specification 1 of the Charge. *United States v. Zubko*, 18 M.J. 378 (C.M.A.1984). However, as the maximum permissible punishment for wrongful distribution of marijuana was circumscribed by the jurisdictional limit of the special court-martial, and as the military judge instructed the court members to consider the two specifications multiplicious for sentencing, the appellant was not prejudiced as to sentence.

### II. Sufficiency of the Staff Judge Advocate's Review

■ Appellant asserts that the staff judge advocate's review was prejudicially deficient in failing to discuss the defense of alibi.[1] Failure to adequately discuss the facts and law pertaining to complicated defenses has been held to constitute prejudicial error. *United States v. Smith*, 48 C.M.R. 659, 660 (C.M.A.1974) (failure to adequately discuss the facts and law pertaining to self-defense renders the post-trial review "prejudicially deficient"); *United States v. Burston*, 50 C.M.R. 497, 497 (C.M.A.1975) (failure to discuss the defense of

entrapment "causes the review to be incomplete on an essential issue"). There is, however, no requirement that the staff judge advocate apply a particular legal label to this discussion. Indeed, in one case the staff judge advocate's use of the word "alibi" in his review was alleged to constitute misleading advice. *United States v. Gentry*, 46 C.M.R. 576, 578 (A.C.M.R.1972). In cases like the one at bar, "alibi" simply means that the accused could not have committed the offenses charged because he was at another place when the offenses occurred. The principal legal concern in the classic alibi instruction is to insure that the fact finder understands that the burden of proof remains on the prosecution to establish the guilt of the accused by competent evidence beyond a reasonable doubt. If the government convinces the fact finder beyond a reasonable doubt that the accused was present at the crime scene, as alleged, the defense of alibi is defeated.

■ In this case, the staff judge advocate summarized the testimony of the defense alibi witnesses. He also instructed the convening authority as to the elements of the alleged offenses which the government was required to prove and stated that "[t]he accused's pleas of not guilty made it incumbent upon the prosecution to prove his guilt beyond a reasonable doubt and by competent evidence of record." In response to this review, civilian defense counsel submitted a thorough discussion of the alibi defense from the defense perspective. Considering the staff judge advocate's review in conjunction with defense counsel's comments in response thereto, we find no fair risk that the convening authority was unaware of either the law pertaining to or the facts supporting the accused's alibi defense. Thus, we find this assignment of error to be without merit.

■ Assuming *arguendo* that the staff judge advocate's review was deficient, as alleged, we find this issue waived by defense counsel's failure to timely raise it in his response to the review. *See United*

1. This case was tried before the effective date of the Military Justice Act of 1983.

*States v. Goode,* 1 M.J. 3 (C.M.A.1975); *United States v. Coner,* 4 M.J. 915 (A.F.C. M.R.1978), *affirmed,* 7 M.J. 372 (C.M.A. 1979) (summary disposition).

### III. Systematic Exclusion of Court Members

Appellant contends that the military judge erred in denying the defense motion for relief based upon the systematic exclusion of company grade and warrant officers from the appellant's court-martial panel.

The facts pertinent to the resolution of this assignment of error are as follows. In the absence of a request for trial by military judge alone or a request for enlisted members, appellant was tried before a special court-martial consisting solely of officer members. On 27 March 1984, MG Andrew P. Chambers referred appellant's case to trial by a special court-marital empowered to adjudge a bad-conduct discharge. Although the appellant was ultimately tried by a different panel of officers, the court-martial order convening the court to which his case was originally referred [2] reflected the convening authority's selection of four lieutenant colonels, one major, and one captain as court members.

On 30 March 1984, the staff judge advocate requested that the adjutant general's personnel records section nominate 54 officers and 37 enlisted personnel to serve as members on courts-martial to be newly constituted. This request directed that the nominees be proportioned among the various grades, *i.e.,* 2 colonels, 12 lieutenant colonels, 15 majors, 15 captains, 10 lieutenants and warrant officers, 12 E–9's, 10 E–8's, 5 E–7's, 5 E–6's, and 5 E–5's, regardless of sex or branch.[3] The adjutant general's office also was advised of the selection criteria of Article 25(d)(2), Uniform Code of Military Justice, 10 U.S.C. § 825(d)(2) (1982) [hereinafter cited as UCMJ]. Subsequently, the staff judge advocate was provided with panel lists in substantial compliance with his request. On 14 May 1984, the staff judge advocate presented the lists by written decision paper to the convening authority, MG Chambers.[4] The convening authority selected two general court-martial and two special court-martial panels from the lists.[5] One of these panels, BCD Panel # 2, contained the names of five lieutenant colonels and one major.[6] On 16 May 1984, Brigadier General (BG) Donald W. Jones, the acting division commander, personally selected the court members who ultimately tried appellant. Appellate Exhibit XIV. These members were the same as those who had been selected by MG Chambers two days earlier to sit as BCD Panel # 2.

 We recognize that a method of court member selection which deliberately

---

**2.** Court-Martial Convening Order Number 23, Headquarters, 1st Cavalry Division, 27 March 1984.

**3.** The request also contained guidance to the personnel records section indicating that "officers of the JAGC, Chaplains, Military Police officers, physicians, dentists, veterinarians, and officers detailed as IG's will not be nominated." We do not find this particular guidance to be erroneous *per se. See, e.g.,* Army Regulation 27–1, Legal Services: Judge Advocate Legal Service, para. 11 (20 Apr. 1976); Army Regulation 27–10, Legal Services: Military Justice, ch. 7 (1 Sep. 1982); *cf. United States v. Hedges,* 29 C.M.R. 458 (C.M.A.1960). Assuming *arguendo* that this guidance was more restrictive than necessary, we are convinced that no prejudice flowed therefrom. When the convening authority, MG Chambers, received the lists of nominees for court-martial duty, he was advised in writing by the staff judge advocate as follows:

"You are not limited in your consideration to these lists, but may, if you so desire, consider all or any portion of the personnel assigned to your command."

**4.** Paragraph 3a of the decision paper (Appellate Exhibit V) advised the convening authority of the selection criteria contained in Article 25(d)(2), UCMJ.

**5.** None of the four panels selected on this day included company grade officers or enlisted personnel below the grade of E–8.

**6.** By trial time, one of the five lieutenant colonels was the division G–3, the other four were battalion commanders, and one of the lieutenant colonels was promotable. MG Chambers was the senior rater of these lieutenant colonels. BG Jones, the Assistant Division Commander, was the senior rater of the major, who was a battalion executive officer.

and systematically excludes all persons of lower ranks is contrary to the Uniform Code of Military Justice. *United States v. Daigle,* 1 M.J. 139, 141 (C.M.A.1975) (rank cannot be "used as a device for deliberate and systematic exclusion of qualified persons"); *United States v. Crawford,* 35 C.M.R. 3, 10 (C.M.A.1964); *United States v. Firmin,* 8 M.J. 595, 598 (A.C.M.R.1979), *pet. denied,* 9 M.J. 5 (C.M.A.1980). Based on the facts of this case, however, we find that no such systematic exclusion occurred.[7]

We also conclude that the findings of the military judge pertaining to this motion were correct.[8]

■ Our inquiry cannot, however, stop at this juncture. It has long been recognized that prejudice results when the composition of the court gives the appearance that a convening authority has "handpicked" the members to favor the prosecution. *See United States v. Hedges,* 29 C.M.R. 458 (C.M.A.1960). Unlike the facts in *Hedges,* however, the facts in this case do not establish such an appearance.

The statutory qualifications for selection as a court-martial member are contained in Article 25(d)(2), UCMJ. In today's Army, senior commissioned and noncommissioned officers, as a class, are older, better educated, more experienced, and more thoroughly trained than their subordinates. The military continuously commits substantial resources to achieve this. Additionally, those officers selected for highly competitive command positions in the Army have been chosen on the "best qualified" basis by virtue of many significant attributes, including integrity, emotional stability, mature judgment, attention to detail, a high level of competence, demonstrated ability,

firm commitment to the concept of professional excellence, and the potential to lead soldiers, especially in combat. These leadership qualities are totally compatible with the UCMJ's statutory requirements for selection as a court member. In view of these facts and the failure of the voir dire or any other part of the trial record to reflect an inelastic attitude or lack of judicial temperament on the part of any court member, we find that the selection process in this case did not create the appearance that Article 25(d)(2), UCMJ, was violated. *Cf. United States v. Delp,* 11 M.J. 836, 838 (A.C.M.R.), *pet. denied,* 12 M.J. 320 (C.M.A.1981).

We find this case clearly distinguishable from the parade of suspicious circumstances which confronted the Court of Military Appeals in *United States v. Greene,* 43 C.M.R. 72 (C.M.A.1970), in which the general court-martial convening authority rejected his special court-martial convening authority's proposed panel of lower ranking officers and, contrary to past practices in the command but based on his staff judge advocate's recommendation, selected a panel composed only of lieutenant colonels and colonels. The convening authority in *Greene* adhered to his decision even after the military judge directed reconsideration of the matter.

■ As the facts of the instant case do not give rise to the appearance of a violation of Article 25(d)(2), the acts of the convening authority enjoy the presumptions of legality, regularity, and good faith. *See United States v. Martinez,* 19 M.J. 744 (A.C.M.R.1984); *United States v. Shearer,* 6 M.J. 737, 739 (A.C.M.R.1978); *United States v. Allen,* 6 M.J. 633, 635 (C.G.C.M.R.

---

7. The record of trial contains the following colloquy:

 MJ: The pattern you're referring to is this particular selection here?
 IDC: Yes, Your Honor.... [W]e'll just stand with our position as to this ... selection process as it relates to this defendant only. As to any other panels that have sat in this courtroom, we ... feel that's irrelevant as to this defendant.
 . . . .

 IDC: Additionally, for the court's information, as to the panel selection, we are not going to present evidence as to other panels.

8. The military judge's findings included the following: "This court finds no systematic exclusion of lower ranking personnel; that the Convening Authority considered lower ranking commissioned and warrant officers, and enlisted members, but elected not to select them."

1978).[9] The burden of establishing the improper selection of court members rests on the appellant. *United States v. Townsend,* 12 M.J. 861 (A.F.C.M.R.1981). We find that the appellant, who was ably represented by both military and civilian counsel, has failed to meet his burden of proof. The assignment of error is without merit.

### IV. Sentence Appropriateness

Appellant maintains that the approved sentence is unduly severe and that it is disproportionate when compared to the sentence received by the drug dealer who was the real target of the covert operation which, by happenstance, netted the accommodating appellant.

 Appellant's argument is unpersuasive. We decline to compare the sentence of another drug dealer, who apparently was engaged in a separate and unrelated drug business, with that of appellant. Even if this drug dealer were a co-actor, Article 66, UCMJ, does not require this court "to grant unwarranted relief to an appellant as a remedy for the lenient sentence given to a more culpable" offender. *United States v. Scantland,* 14 M.J. 531, 533 (A.C.M.R.), *pet. denied,* 14 M.J. 449 (C.M.A.1982).

 The fundamental question is whether appellant's sentence is appropriate under the circumstances of his case. We find that it is. In making this determination, we are well aware that the appellant was sentenced to a bad-conduct discharge and six months' confinement. However, we note that no forfeitures were adjudged and that the appellant's case was referred to trial by special court-martial, a level at which the permissible maximum punishment for wrongful distribution of marijuana was substantially limited by the court's statutory jurisdictional limitations.

9. While we are aware that the issue of improper court member selection has historically been resolved by examining the convening authority's conduct in light of the standard provided in Article 25(d)(2), UCMJ, we note that there can be a close relationship between the mandate of Article 25(d)(2) and the admonition of Article 37(a), UCMJ, when the convening authority selects the court members in an attempt to influence the trial result. In the instant case, however, we need not examine the issue of unlawful command influence under Article 37, as we have found in the convening authority's court member selection neither impropriety nor the appearance thereof.

The finding of guilty of Specification 1 of the Charge is set aside and that specification is dismissed. The remaining findings of guilty and the sentence are affirmed.

Chief Judge SUTER and Judge HUNTER concur.